# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00221-CR

**Federico Trejo, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 207TH DISTRICT COURT OF COMAL COUNTY**
**NO. CR2016-020, THE HONORABLE JACK H. ROBISON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Federico Trejo of murder, assessing punishment at fifty-five years' imprisonment. *See* Tex. Penal Code § 19.02(b)(1). The district court rendered its judgment of conviction consistent with the jury's verdict. On appeal, Trejo complains that the district court's charge erroneously included: (1) an instruction on provocation; (2) an instruction limiting self-defense while carrying a weapon and seeking an explanation; and (3) instructions that improperly merged provocation and seeking an explanation while carrying a weapon unlawfully. We will affirm the judgment of conviction.

## BACKGROUND

Trejo was charged with murdering Domingo Perez, Jr. by shooting him during an early-morning confrontation at a gas station. Trejo first met Perez about three weeks before the murder. They were not on good terms after Perez initiated an affair with Trejo's wife, Jessica

Trejo.[1]  Trejo, Jessica, and their three children lived with his mother, Dora, and his father at the Vista del Sol Apartments in New Braunfels.

A video of Trejo's statement to police was admitted into evidence.  Trejo stated that in the hours before the murder, Trejo, Jessica, their children, and some friends were barbequing at the nearby Linde Apartments.  Jessica drove to Walmart in an Avalanche truck to get some bread for the barbeque.  Trejo became suspicious that Jessica was taking too long, and he rode his bicycle to the Walmart parking lot where he found Perez next to the truck Jessica was in.  Trejo threw his bicycle in the back of the truck, and he and Jessica left.

During the drive, Trejo and Jessica got into an argument about her suspected infidelity, which she denied.  Jessica became upset, got out of the truck, and walked away.  Trejo drove back to the Linde Apartments, picked up his children, and returned home to the Vista Del Sol Apartments.

Meanwhile, Jessica called Perez's cell phone asking him to pick her up from Walmart.  A police detective who reviewed Walmart's surveillance footage testified that Perez's vehicle, a red Cutlass, arrived at about midnight in the Walmart parking lot.  The detective stated that a female that looked like Jessica walked over to Perez's vehicle and got inside, and they drove away.  Jessica subsequently confirmed to police that she and Perez were having an affair.

After Trejo was home, he made a phone call to Perez asking why Perez was "doing all this," and what Trejo ever "did to [him]."  Perez told Trejo that Jessica was with him.  Trejo got "mad" and asked Dora to drive him around to look for Jessica.

---

[1]  We refer to Federico Trejo's wife and to his mother by their first names because they share the same last name.

Perez made a nighttime phone call to his wife sometime before the murder. She testified that Perez said, "Somebody is just talking mess to me." She told him to "[j]ust come home," but he did not.

Trejo used Dora's phone to make two calls to 911 before the murder, one at 12:40 a.m. and the other at 1:24 a.m. Recordings of the 911 calls were admitted into evidence and played for the jury. In the first call, Trejo identified himself as "Jacob Sandoval" and reported that "Mingo" was driving around in a red Cutlass with two loaded guns and "pointing guns out of the car, just out of nowhere." Trejo said that he had last seen him at the entrance to "the Lindes" and that "he could be at Solms by Walmart or somewhere 'round here in town parked somewhere." Trejo told the 911 dispatcher that "Mingo" was "really upset." In the second call, Trejo stated that he was calling because he heard a tip about a Cutlass that he had called about earlier. Trejo stated that "this Cutlass, he was driving the back roads going toward 725, or going toward 725 to his house." Trejo also stated that "this guy is real dangerous."

Dora testified that Trejo asked her to go to Walmart to look for Jessica. Dora drove Trejo to Walmart, but Jessica was not there, and they returned home. Around midnight, Trejo asked Dora to take him to Jessica's father's house. Trejo put on a big jacket and concealed his gun in the pocket. Dora denied seeing her son with a gun at any point. She testified that it was "not really cold" enough for Trejo to wear the jacket that he did, and she asked him, "Why are you wearing that?"[2] Dora then drove Trejo in her van.

Dora recalled that she was not going to the gas station, but Trejo directed her there. Before she pulled into the driveway of the gas station, Trejo jumped out of her van. She

---

[2] The record does not reflect whether Trejo responded to her question.

saw him "running like crazy" toward a car in the parking lot.[3]  The car started to move after her son started running toward it.  Dora testified that she "heard a big noise" and thought that her son had broken the car's window.  Dora decided to leave because she feared whoever was driving the car would retaliate by hitting her van or that "he was going to come and get [her]."  Trejo got back into the van and they went back home.

Trejo told police that while at a light at Ruckle Road, he saw Perez parked on the side of a Shell gas station.  Trejo said that he wanted to talk to Perez, and he described how he approached Perez's vehicle while gesturing with his arms and hands and yelling, "What's going on?  Why are you doing all this?"  Trejo stated that he fired one round from the passenger side of Perez's car.  Trejo saw Perez's car come to a stop as Trejo was leaving in the van.

Surveillance video from the gas station and convenience store showed some movements of Dora's van and Perez's car, but did not capture the shooting itself.  Only twenty-one seconds elapsed from the time that Dora's van took a turnaround to get to the gas station to the time that Perez's vehicle rolled to a stop after the shooting.  A forensic analyst who reviewed the video evidence testified that the only time the victim's car was "off camera" and in a "blind spot" was during a 2.2-second interval when the shooting occurred.  Various angles of the admitted timestamped video show Perez exiting the convenience store and entering a parked red car; the lights of Dora's van approaching the car; both vehicles moving out of the camera's view at 1:57:49; the car reappearing at 1:57:51 and stopping diagonal to a set of gas pumps; and the van driving across the convenience store's parking spaces while leaving the gas station at 1:58:03.

---

[3] A brief portion of Dora's videorecorded statement to police was admitted into evidence for impeachment purposes and played for the jury.

4

A police officer testified he and another officer were on patrol when he observed a car parked at a gas station at a "weird angle" between the air pumps and gas pumps that would not allow access to either. He thought that the driver might need assistance or be passed out drunk. The officers approached the vehicle on both sides. The windows were down, and the officers reached inside to wake the driver—later identified as Perez—who was slumped across the passenger seat of the vehicle. Medics were summoned after an officer detected a faint pulse in Perez's neck. The officers then removed Perez from the car. One officer began CPR and noticed a bloodstream running down Perez's side. When officers rolled Perez over, they discovered what appeared to be a gunshot wound.

A forensic pathologist testified that Perez's cause of death was a gunshot wound to the back. She testified that the bullet entered Perez's back on the right side, traveling slightly upward as it passed through his lungs, aorta, and spleen and fracturing a rib before lodging in the soft tissue of his body. She determined that when Perez was shot, the gun was fired from two or more feet away from him.

Trejo fled New Braunfels and was later apprehended by the Bell County Organized Crime Unit in Harker Heights. In his statement to police, Trejo said that he shot Perez accidentally when "shooting at the car" as Perez drove toward him. Trejo also told police that he made several calls to 911 "because he [Perez] had pulled a gun on me at Lindes."

However, Dora testified that Trejo did not tell her anything about someone pointing a gun at him earlier in the evening or that someone in a red car had threatened him. Dora stated that Trejo told her, "I used a gun," and that "he might have killed somebody." She denied that Trejo ever told her that what happened at the gas station was an accident.

5

After the parties rested their cases, the jury received the court's charge addressing the law of self-defense, provocation, and use of deadly force. *See* Tex. Penal Code §§ 9.31(a) (self-defense), (b)(4) (provocation), 9.32 (use of deadly force). Trejo made no objections to the court's charge.

The jury returned a verdict finding Trejo guilty of murder. During the punishment phase of trial, the jury found that Trejo did not commit the murder under the influence of sudden passion, and the jury assessed punishment at fifty-five years' imprisonment. The district court rendered judgment in accordance with the jury's verdict. Trejo filed a motion for new trial that was denied by operation of law. This appeal followed.

## DISCUSSION

All Trejo's appellate issues complain of errors in the jury charge. The trial court must deliver to the jury a written charge distinctly setting forth the law applicable to the case. Tex. Code Crim. Proc. art. 36.14. Jury instructions must apply the law to the facts adduced at trial and conform to allegations in the indictment. *Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012). We review alleged jury-charge error in two steps: first, we determine whether error exists; and if so, we evaluate whether any harm resulting from such error requires reversal. *See Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).

### Issue 1: Inclusion of instruction on provocation

In his first issue, Trejo complains that the district court's charge improperly included an instruction on provocation, a limitation on a claim of self-defense.

6

Texas law provides that a person is justified in using deadly force against another when, among other things, the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. Tex. Penal Code § 9.32(a)(1), (2)(A). But "a defendant may forfeit his right to self-defense if he provokes the attack." *Elizondo v. State*, 487 S.W.3d 185, 197 (Tex. Crim. App. 2016); *see* Tex. Penal Code § 9.31(b)(4).

A jury instruction on provocation is required when there is sufficient evidence for a rational jury to find beyond a reasonable doubt that: (1) the defendant did some act or used some words that provoked the attack on him; (2) such act or words were reasonably calculated to provoke the attack; and (3) the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm on the other. *Elizondo*, 487 S.W.3d at 197 (citing *Smith v. State*, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998)). Under this standard, the trial court must determine whether "evidence has been presented that *could* support a jury's finding on all three elements of provocation beyond a reasonable doubt." *Id.* (emphasis in original); *see Gomez v. State*, No. 05-04-01272-CR, 2006 Tex. App. LEXIS 163, at *13 (Tex. App.—Dallas Jan. 10, 2006, pet. ref'd) (mem. op., not designated for publication) (noting that it is not reviewing court's role to decide whether evidence actually established that defendant provoked difficulty with intent to harm victim; rather, if evidence is sufficient to submit provocation issue to jury, that question is within province of jury as factfinder and judge of credibility). When reviewing a trial court's decision to include a provocation instruction in a jury charge, we view the evidence in the light most favorable to giving the instruction. *Elizondo*, 487 S.W.3d at 197.

The parties agree that the first two factors supporting a jury instruction on provocation are met, i.e., the parties acknowledge that there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Trejo did some act or used some words that provoked the attack on him and that such act or words were reasonably calculated to provoke the attack.[4] *See id*. But the parties join issue as to the third and final factor, whether "the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm on the other." *See id*. Situations where the jury is prevented from considering the question of what the defendant's intent was in provoking an attack from the deceased victim are "exceptional and extraordinary." *Smith*, 965 S.W.2d at 519.

Here, the evidence at trial indicated that Trejo acted or spoke with the intent that he would have pretext for inflicting harm on Perez. The jury heard recordings of 911 calls Trejo made—identifying himself as "Jacob Sandoval"—reporting that "Mingo" was driving around in a red Cutlass with loaded guns and "pointing guns out of nowhere." Trejo also told the 911 dispatcher that "Mingo" was "really upset" and "this guy is real dangerous." Trejo told police that he made several calls to 911 "because he [Perez] had pulled a gun on me at Lindes." But Dora testified that Trejo did not tell her anything about someone pointing a gun at him earlier in the evening or that someone in a red car had threatened him. Moreover, the forensic pathologist testified that Perez was shot in the back. Based on this evidence, the jury could have reasonably found that Trejo made statements to 911 and police to suggest that Perez was acting aggressively and that Perez was the instigator of the events that occurred later at the gas station.

---

[4] Trejo's brief states, "Mr. Trejo concedes that a rational jury may have found the first two *Smith* elements of provocation, as Mr. Trejo did get out of his vehicle and go toward the deceased's vehicle while gesturing with his hands."

Further, a forensic analyst who reviewed the gas station's video testified that the only time the victim's car was "off camera" and in a "blind spot" was during a 2.2-second interval when the shooting occurred. Various angles of the video show Perez exiting the convenience store and entering a parked red car; the lights of Dora's van approaching the car; both vehicles moving out of the camera's view at 1:57:49; the car reappearing at 1:57:51 but stopping diagonal to a set of gas pumps; and the van driving across the convenience store's parking spaces while leaving the gas station at 1:58:03. Based on the video evidence and the forensic analyst's testimony, the jury could have reasonably found that Trejo pulled his gun and shot Perez within seconds of confronting him at the gas station.

Having considered the evidence at trial in the light most favorable to giving the instruction, we conclude that the district court could have determined that such evidence would support a rational jury's finding beyond a reasonable doubt that Trejo acted or spoke with the intent that he would have pretext for inflicting harm on Perez. *See Elizondo*, 487 S.W.3d at 197. Accordingly, the district court did not err by including the provocation instruction in the jury charge. We overrule Trejo's first issue.

**Issue 2: Inclusion of instruction on "seeking an explanation while carrying a weapon"**

In his second issue, Trejo contends that the district court's charge improperly included an instruction on "seeking an explanation [or discussion] while carrying a weapon," a limitation on his claim of self-defense that he says was not warranted by the evidence at trial.

Texas law provides that the use of force against another in self-defense is not justified if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was carrying a weapon unlawfully.

9

Tex. Penal Code § 9.31(b)(5)(A) (referencing unlawful carrying of weapons in section 46.02 of Penal Code); *see id*. § 46.02. If there is evidence raising this issue, an instruction should be submitted. *Lee v. State*, 259 S.W.3d 785, 790 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). We consider the evidence in the light most favorable to giving the instruction to determine whether there was sufficient evidence from which a rational jury could have found two elements: (1) that Trejo sought an explanation from or discussion with Perez and (2) that Trejo was unlawfully carrying a weapon. *See Fink v. State*, 97 S.W.3d 739, 743 (Tex. App.—Austin 2003, pet. ref'd). Trejo challenges only the first element, contending that there is no evidence that he sought out Perez and no evidence that he initiated any verbal dialogue with Perez at the gas station to engage him in discussion or ask for an explanation. We disagree.

The jury heard evidence that before the shooting, Trejo called Perez, who stated that Jessica was with him. This made Trejo "mad." Trejo put on a big jacket and concealed his gun inside a pocket. Trejo asked Dora to drive him in her van, not the truck that Perez had seen him driving earlier. Trejo told police that while at the light at Ruckle Road, he saw Perez parked on the side of a Shell gas station. Trejo said that he wanted to talk to Perez, and Trejo described to police how he approached Perez's vehicle while gesturing with his arms and hands and yelling, "What's going on? Why are you doing all this?"

Based on this evidence, a rational jury could have found that Trejo went looking for Perez after confirming that Jessica was with him, and that when Trejo spotted Perez's car at the gas station, Trejo approached wanting to talk to Perez and seeking an explanation from him about what "was going on" and why Perez "was doing all this." Because there was evidence raising the issue, we conclude that the trial court did not err by including an instruction in the charge on seeking an explanation from or discussion with another person concerning the

10

defendant's differences with the other person while unlawfully carrying a weapon. *See Lee*, 259

S.W.3d at 790; *Fink*, 97 S.W.3d at 744; *see also* Tex. Penal Code § 9.31(b)(5)(A). We overrule

Trejo's second issue.

**Issue 3:   Merged instructions on provocation and seeking explanation while carrying weapon**

In his third issue, Trejo complains that the district court's charge improperly

merged the jury instructions on provocation and "seeking an explanation while carrying a

weapon," which improperly limited his claim of self-defense. Trejo contends that the instruction

on "Provoking the Use or Attempted Use of Force" misled the jury because "if they believed that

[he] merely approached the deceased's vehicle without seeking an explanation," this alone could

constitute provocation sufficient to rebut Trejo's self-defense claim. Trejo also complains that

the application paragraph was erroneous because it omitted any language on seeking an

explanation or discussion while unlawfully armed. We disagree.

The relevant portion of the complained-of charge states:

**Provoking the Use or Attempted Use of Force**

To prove that the defendant provoked the other, the state must show all of the following:

1. The defendant did some acts or used some words that caused the other person to attack the defendant; and

2. The acts or words by the defendant were reasonably calculated to provoke the attack; and

3. The defendant did the acts or used the words for the purpose and with the intent that the defendant would have a pretext for killing the other person or inflicting serious bodily injury on him.

11

However, a person who seeks an explanation from or a discussion with another person concerning differences between them cannot use force in self-defense while the person is carrying a weapon in violation of section 46.02 of the Texas Penal Code.

Section 46.02 of the Texas Penal Code prohibits a person from intentionally, knowingly, or recklessly carrying on or about the person a handgun, illegal knife, or club if the person is neither—

1. on the person's own premises or premises under the person's control; or

2. inside of or directly en route to a motor vehicle or watercraft that is owned by the person or under the person's control.

You must consider whether the state has proved, beyond a reasonable doubt, that the defendant approached another person for the purpose of seeking an explanation from or a discussion with that other person concerning their differences while in violation of the Penal Code. If the state has proved this, you should not apply a general rule that approaching another person, even while armed, for the purpose of seeking an explanation from or a discussion with that other person concerning their differences does not constitute provocation as would deprive the person of the right to defend himself.

You must still determine whether the state has proved, beyond a reasonable doubt, that the defendant provoked the other person. In making this determination, however, you are not to assume that the defendant's approach to the other person is necessarily not provocation.

**Burden of Proof**

The defendant is not required to prove self-defense. Rather, the state must prove, beyond a reasonable doubt, that self-defense does not apply to the defendant's conduct.

**Definitions**

"Reasonable belief" means a belief that an ordinary and prudent person would have held in the same circumstances as the defendant.

"Deadly force" means force that is intended or known by the person using it to cause death or serious bodily injury or force that in the manner of its use or intended use is capable of causing death or serious bodily injury.

**Application of Law to Facts**

If you have found that the state has proved the offense beyond a reasonable doubt, you must next decide whether the state has proved that the defendant's conduct was not justified by self-defense.

To decide the issue of self-defense, you must determine whether the state has proved, beyond a reasonable doubt, one of the following:

1. The defendant did not believe his conduct was immediately necessary to protect himself against Domingo Perez, Jr.'s use or attempted use of unlawful deadly force; or

2. The defendant's belief was not reasonable; or

3. The defendant provoked Domingo Perez, Jr.'s use or attempted use of unlawful deadly force.

You must all agree that the state has proved, beyond a reasonable doubt, either element 1, 2, or 3 listed above. You need not agree on which of these elements the state has proved.

If you find that the state has failed to prove, beyond a reasonable doubt, either element 1, 2, or 3 listed above, you must find the defendant "not guilty."

If you all agree the state has proved, beyond a reasonable doubt, each of the elements of the offense of Murder, and you all agree the state has proved, beyond a reasonable doubt, either element 1, 2, or 3 listed above, you must find the defendant "guilty."

This charge tracks the instructions and definitions set forth in the Texas Criminal Pattern Jury Charges as to a defendant's claim of self-defense for an offense involving the use of deadly force that also presents issues of provocation and approaching another while unlawfully armed. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Criminal Pattern Jury Charges: Criminal Defenses* CPJC 31.17 & cmt., 32.3 & cmt. (2015). These pattern jury charges incorporate relevant sections of the Penal Code and provide a correct statement of the law. *See* Tex. Penal Code §§ 1.07(a)(42) (defining "reasonable belief"), 9.01(3) (defining "deadly force"),

9.31(a) (addressing self-defense), (b)(4) (addressing provocation), 9.32 (addressing use of deadly force), 46.02(a) (addressing unlawful carrying of weapons). Further, the record of the charge conference reflects that the district court and trial counsel for both parties specifically drafted this charge to follow the criminal pattern jury charges.

Accordingly, we are not persuaded by Trejo's contentions that the district court erred by providing a charge that "misled the jury" and "improperly limited his claim of self-defense" through a merging of jury instructions on provocation and seeking an explanation while carrying a weapon. *See Lerma v. State*, No. 03-18-00578-CR, 2019 Tex. App. LEXIS 7086, at *8 (Tex. App.—Austin Aug. 14, 2019, no pet. h.) (mem. op., not designated for publication) (rejecting defendant's contention that court's charge that tracked applicable criminal pattern jury charges was erroneous); *Preston v. State*, No. 03-16-00573-CR, 2018 Tex. App. LEXIS 5412, at *35 (Tex. App.—Austin July 18, 2018, no pet.) (mem. op., not designated for publication) (concluding that defendant was not egregiously harmed by inclusion of self-defense instruction that tracked instruction from criminal pattern jury charge); *see also Reeves v. State*, 420 S.W.3d 812, 818 n.30 (Tex. Crim. App. 2013) (noting that instructions from criminal pattern jury charges on provocation "subdivide the various issues into short lists that jurors may read and understand without undue difficulty"). We overrule Trejo's third issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Kelly and Smith

Affirmed

Filed:   March 20, 2020

Do Not Publish